UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:25-cv-60148

ANDREE CAMPBELL,

      Plaintiff,

vs.

TECHY, LLC,
a Florida Limited Liability Company; and

TECHY COMPANY LLC,
a Florida Limited Liability Company,

      Defendants.

_____/

## **<u>COMPLAINT</u>**

Plaintiff ANDREE CAMPBELL, by and through undersigned counsel, sues Defendants TECHY, LLC, and TECHY COMPANY LLC, Florida Limited Liability Companies, and alleges as follows:

1.     This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.     This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.     Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.     Plaintiff ANDREE CAMPBELL is a resident of Broward County, Florida, is sui

juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from retinopathy, which is a permanent eye and medical condition that substantially and significantly impairs her vision and limits her ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, she is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.      Because she is blind, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay

this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8. Defendants are Florida Limited Liability Companies authorized to do business and doing business in the State of Florida. Defendants own, operate, and/or control a chain of over 200 repair shops specializing in electronic device repairs, installations, and sales, including the shop Plaintiff intended to patronize in the near future (and as early as January and/or early February 2025), which is located at 3000 Southwest 4th Avenue, Fort Lauderdale, FL 33315.

9. Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

10. Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11. At all times material hereto, Defendants were and still are organizations that own, operate, and/or control a chain of over 200 shops under the name "Techy". Each "Techy" shop is open to the public. As the owners, operators, and/or controllers of these shops, Defendants are defined as a place of "public accommodation" within the meaning of the ADA per 42 U.S.C §12181 and 28 C.F.R. §36.104.)

12. Because Defendants represent shops open to the public, each of Defendants' physical shops is a place of public accommodation subject to the requirements of the ADA, 42

U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13.     Defendants also own, control, maintain, and/or operate an adjunct website, https://www.techycompany.com/ (the "Website"). The Defendants sell their merchandise to the public through the Website, which serves as a critical point of sale for items also available in the Defendants' physical repair shops. It provides contact information, directions, and store operating hours. In addition, the Website allows users to find the nearest store using the site's locator, discover services offered, including electronic repairs, installations, and sales, shop for electronic devices online, add products to a wish list, compare products based on their technical parameters, sign up for a more personalized shopping experience, explore shipping options, learn about Tech University for guidance in the electronic repair industry, discover franchising opportunities, read customer reviews, use the Techy AI assistant to receive answers to frequently asked questions, discover company news, view career opportunities, explore the company's podcasts, learn about the TechySave membership program, read blog posts, review policies, and contact the company via an online form.

14.     The Website also services Defendants' physical repair shops by detailed information on available services, service prices, membership options, special offers and promotions, and other information that Defendants are interested in communicating to their customers.

15.     Because the Website allows the public the ability to secure information about the locations of Defendants' physical repair shops, find the nearest store using the site's locator, discover services offered, including electronic repairs, installations, and sales, shop for electronic devices online, add products to a wish list, compare products based on their technical parameters, sign up for a more personalized shopping experience, explore shipping options, learn about Tech University for guidance in the electronic repair industry, discover franchising opportunities, read

customer reviews, use the Techy AI assistant to receive answers to frequently asked questions, discover company news, view career opportunities, explore the company's podcasts, learn about the TechySave membership program, read blog posts, review policies, and contact the company via an online form, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendants' physical repair shops, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendants' physical repair shop in that, it acts as a critical point of sale for the store, it enables users of the Website to make purchases of Defendants' merchandise that is also available for purchase in, from, and through their physical locations.

16.     Because the public can find the nearest store using the site's locator, discover services offered, including electronic repairs, installations, and sales, shop for electronic devices online, add products to a wish list, compare products based on their technical parameters, sign up for a more personalized shopping experience, explore shipping options, learn about Tech University for guidance in the electronic repair industry, discover franchising opportunities, read customer reviews, use the Techy AI assistant to receive answers to frequently asked questions, discover company news, view career opportunities, explore the company's podcasts, learn about the TechySave membership program, read blog posts, review policies, and contact the company via an online form, the Website is an extension of, and gateway to the physical repair shops, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar repair

shops that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical repair shops.

17.    At all times material hereto, Defendants were and still are organizations owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar shops that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical repair shops. As such, Defendants have subjected themselves and the Website to the requirements of the ADA.

18.    Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as January and/or early February 2025), Defendants' physical repair shop located at 3000 Southwest 4th Avenue, Fort Lauderdale, FL 33315, and to search for brick-and-mortar repair shops, find the nearest store using the site's locator, discover services offered, including electronic repairs, installations, and sales, shop for electronic devices online, add products to a wish list, compare products based on their technical parameters, sign up for a more personalized shopping experience, explore shipping options, learn about Tech University for guidance in the electronic repair industry, read customer reviews, use the Techy AI assistant to receive answers to frequently asked questions, discover company news, view career opportunities, explore the company's podcasts, learn about the TechySave membership program, read blog posts, review policies, and contact the company via an online form. In the alternative, Plaintiff intends to monitor the Website

6

in the near future (and as early as January and/or early February 2025) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19.     The opportunity to find the nearest store using the site's locator, discover services offered, including electronic repairs, installations, and sales, shop for electronic devices online, add products to a wish list, compare products based on their technical parameters, sign up for a more personalized shopping experience, explore shipping options, learn about Tech University for guidance in the electronic repair industry, discover franchising opportunities, read customer reviews, use the Techy AI assistant to receive answers to frequently asked questions, discover company news, view career opportunities, explore the company's podcasts, learn about the TechySave membership program, read blog posts, review policies, and contact the company via an online form, and more from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendants have not provided their business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan her store visits and to compare merchandise, prices, services, sales, and promotions. Plaintiff may look at several dozen websites to compare features, products, services, promotions, and prices.

21.     Beginning in November 2024, Plaintiff attempted on multiple occasions to utilize the Website to browse merchandise and online offers, educate herself about the services, products, offers, membership options, and promotions available, learn about the brick-and-mortar locations, and check available products and services with the intent to make a purchase through the Website or in, from, and through the physical repair shops. Plaintiff also attempted to access and utilize the Website in her capacity as a tester to determine whether it was accessible to blind and visually

disabled persons such as herself who use screen reader software to access and navigate company website.

22.     Plaintiff needed a new charging cable and wanted to find a nearby store specializing in electronics and accessories. On or about November 15, 2024, she conducted a Google search and discovered the Defendants' website. Using the JAWS screen reader, she attempted to navigate the site and explore its products. However, she encountered multiple accessibility issues that made navigation inefficient. These issues included the absence of a bypass block, multiple ambiguously labeled links, and poorly labeled interactive elements. When she attempted to add the desired product to the cart, a mini-cart dialog appeared. However, the focus did not shift to the dialog, nor was there any announcement indicating that the product had been added to the cart. As a result, Plaintiff was unable to complete the checkout process for the desired product on the Defendants' website.

23.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendants' Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a.   "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

b.   Landmarks were not properly inserted into the home page. Plaintiff tried to navigate the home page using landmarks but could not access its main regions because of landmark inaccurate markup;

c.   Landmark structure was incorrectly defined. Due to repetitive landmark labels, it was difficult for Plaintiff to understand the page section they led to. For example, "navigation" landmark was repeat three times;

d.   Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help Plaintiff effectively find the content of interest and understand the logical structure of the home

page;

e.   The Navigation menu did not allow the repeated content to be expanded or collapsed, and when the sub-menu was collapsed, it expanded automatically after receiving focus;

f.   The Navigation menu contained elements with drop-down menu, and they did not announce their state - "collapsed" or "expanded". As a result, Plaintiff had difficulty in navigating the menu and could not determine in which part of the sub-menu the keyboard focus was located;

g.   Several links had ambiguous texts that were unclear to Plaintiff. Lack of detailed description of the link target and destination page made it difficult for Plaintiff to perceive their purpose.  For example, a link labeled "Click here" did not provide sufficient context;

h.   Links led to other websites and did not indicate that they were external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customers about the significant change of the context;

i.   Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented. For example, the "Shop" link opened a new window without providing any announcement or indication;

j.   Interactive elements that behaved as "buttons" were not programmatically written correctly. Instead of using a "role" attribute, they were built by tags such as <span>, <div>, <a>, or others. As a result, the screen reader software read the incorrectly constructed element and Plaintiff was confused, because of receiving ambiguous information about the element in focus. For example, the button for opening the side navigation and the cart button were incorrectly announced as links;

k.   Several links had different link texts but lead to the same destinations. It was confusing for Plaintiff to navigate to the same destination, while accessing different links. For example, both the category link and the link showing the number of products available in the category led to the same destination;

l.   Interactive elements on the website could not be focused using either the Tab key or the arrow keys. As a result, Plaintiff was unaware of the interactive elements on the page. For example, the buttons for controlling the carousel product sections were not accessible via the keyboard;

m.   Plaintiff encountered interactive images that were used as links that did not describe the content of the link target. There were no details what kind of information can be found on the destination page. For example, some product images used as links had the file name of the image as the alt text, which did not provide meaningful information about the link target;

n.   The email address was not interactive and inaccessible for the screen reader software. As a result, Plaintiff would not have been able to contact customer support in case she had

some questions to clarify details about product or purchase procedure;

o.   Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links;

p.   Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element. For example, the buttons for changing product quantities were announced as "button" and "plus button" without providing any meaningful context or explanation of their function;

q.   When opening a dialog, focus order did not move from trigger button to dialog items. Plaintiff was confused navigating through content, and encountered information in an order that is inconsistent with the meaning of the content and can be operated from the keyboard. For example, after pressing the "Add to Basket" button, the mini-cart dialog appeared, but the focus did not shift to it.

24.   Accordingly, Defendants' Website was incompatible with Plaintiff's screen reading software and keyboard.

25.   The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same online experience, with the same access to the merchandise, sales, services, discounts, as provided at the Website and in the physical repair shops as the non-visually disabled public.

26.   Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendants' physical repair shop located at 3000 Southwest 4th Avenue, Fort Lauderdale, FL 33315, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendants due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from

Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.     Because of the nexus between Defendants' physical shops and the Website, and the fact that the Website clearly provides support for and is connected to Defendants' physical repair shops for its operation and use, the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar repair shops that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical repair shops, which are places of public accommodation subject to the requirements of the ADA.

28.     On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

30.     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

33.     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendants have not instituted an Automated Web

Accessibility Testing program.

35.     Defendants have not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

36.     Defendants have not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37.     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

38.     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendants' merchandise offered on the Website and in the physical repair shops from their homes.

39.     Defendants thus have not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical repair shops in contravention of the ADA.

40.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

42.     Defendants are, and at all relevant times have been, aware of the barriers to effective

communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

43.    Defendants are, and at all relevant times have been, aware of the need to provide full and equal access to all visitors to the Website.

44.    The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with the Website's access and operation.

46.    Notice to Defendants is not required because of Defendants' failure to cure the violations.

47.    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48.    Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

## AGAINST TECHY, LLC

49.    Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50.    Pursuant to 42 U.S.C. §12181(7), Defendant, TECHY, LLC, represents a public accommodation under the ADA and thus is subject to the ADA.

51.    Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to secure information about the locations of Defendant, TECHY, LLC's, physical repair shops, find the nearest store using the site's locator,

discover services offered, including electronic repairs, installations, and sales, shop for electronic devices online, add products to a wish list, compare products based on their technical parameters, sign up for a more personalized shopping experience, explore shipping options, learn about Tech University for guidance in the electronic repair industry, discover franchising opportunities, read customer reviews, use the Techy AI assistant to receive answers to frequently asked questions, discover company news, view career opportunities, explore the company's podcasts, learn about the TechySave membership program, read blog posts, review policies, and contact the company via an online form. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant, TECHY, LLC's physical repair shops. Further, the Website serves to augment Defendant, TECHY, LLC's physical repair shops by providing the public information about the repair shops and by educating the public as to Defendant, TECHY, LLC's available merchandise sold through the Website and in, from, and through the physical repair shops.

52.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful

discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55.     Defendant, TECHY, LLC's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant, TECHY, LLC, has made available to the public on the Website and in the physical repair shops in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

58.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

59.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, ensuring the presence of a bypass block section, making link texts distinctive and clear, and ensuring that interactive elements are focusable via the keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally

alter the nature of Defendant, TECHY, LLC's business nor would it result in an undue burden to Defendants.

60.     Defendant, TECHY, LLC has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant, TECHY, LLC has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

61.     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

62.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.     As alleged hereinabove, the Website has not been designed to interface with the

16

widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

66.     As a direct and proximate result of Defendant, TECHY, LLC's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar repair shops, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with its Website and its physical locations.

67.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant, TECHY, LLC,  to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant, TECHY, LLC's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical repair shops through the Website.

b) Require Defendant, TECHY, LLC to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant, TECHY, LLC to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating its physical repair shops and becoming informed of and

purchasing its merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical repair shops.

69.     Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

## COUNT II– VIOLATION OF THE ADA

## AGAINST TECHY COMPANY LLC

70.     Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

71.     Pursuant to 42 U.S.C. §12181(7), Defendant, TECHY COMPANY LLC, represents a public accommodation under the ADA and thus is subject to the ADA.

72.     Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to secure information about the locations of Defendant, TECHY COMPANY LLC's, physical repair shops, find the nearest store using the site's locator, discover services offered, including electronic repairs, installations, and sales, shop for electronic devices online, add products to a wish list, compare products based on their technical parameters, sign up for a more personalized shopping experience, explore shipping options, learn about Tech University for guidance in the electronic repair industry, discover franchising opportunities, read customer reviews, use the Techy AI assistant to receive answers to frequently asked questions, discover company news, view career opportunities, explore the company's podcasts, learn about the TechySave membership program, read blog posts, review policies, and contact the company via an online form. The Website thus is an extension of, gateway to, and

intangible service, privilege, and advantage of Defendant, TECHY COMPANY LLC's physical repair shops. Further, the Website serves to augment Defendant, TECHY COMPANY LLC's physical repair shops by providing the public information about the repair shops and by educating the public as to Defendant, TECHY COMPANY LLC's available merchandise sold through the Website and in, from, and through the physical repair shops.

73.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

74.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

75.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

76.     Defendant, TECHY COMPANY LLC's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

77.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant, TECHY COMPANY LLC, has made available to the public on the Website and in the physical repair shops in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

78.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

79.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

80.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, ensuring the presence of a bypass block section, making link texts distinctive and clear, and ensuring that interactive elements are focusable via the keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant, TECHY COMPANY LLC's business nor would it result in an undue burden to Defendants.

81.     Defendant, TECHY COMPANY LLC has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant, TECHY  COMPANY LLC has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

82.     The ADA requires that public accommodations and places of public

accommodation ensure that communication is effective.

83.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

84.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

85.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

86.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

87.     As a direct and proximate result of Defendant, TECHY COMPANY LLC's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar repair shops, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with its Website and its physical locations.

88.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the

ongoing disability discrimination.

89.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

d) Require Defendant, TECHY COMPANY LLC, to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant, TECHY COMPANY LLC's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical repair shops through the Website.

e)  Require Defendant, TECHY COMPANY LLC to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

f)  Require Defendant, TECHY COMPANY LLC to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating its physical repair shops and becoming informed of and purchasing its merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical repair shops.

90.     Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants for the following relief:

A.  A declaration that Defendants' Website is in violation of the ADA;

B.  An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E.  An Order directing Defendants, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to its Website;

_____

[1]  or similar.

F.  An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendants' Website to be fully accessible to the visually disabled;

H.  An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

DATED: January 27, 2025.

**ALEKSANDRA KRAVETS, ESQ. P.A.**
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By: _____ */s/ Aleksandra Kravets, Esq.*
       Aleksandra Kravets, Esq.
       FBN: 120562